**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dominic Daniel AIRDO, Defendant-**
**Appellant.**

**No. 15786.**

United States Court of Appeals
Seventh Circuit.

June 19, 1967.

Rehearing Denied July 12, 1967.

Certiorari Denied Oct. 23, 1967.

See 88 S.Ct. 238.

Jason Ernest Bellows, Irwin D. Bloch, Sherman C. Magidson, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Gerald M. Werksman, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Richard T. Sikes, Asst. U. S. Attys., of counsel, for appellee.

Before SCHNACKENBERG, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Dominic Daniel Airdo appeals from a judgment of conviction entered upon a jury verdict of guilty on an indictment charging him with unlawful possession of a television set stolen from interstate commerce, in violation of 18 U.S.C. § 659.[1] The defendant does not challenge the sufficiency of the evidence. In urging reversal of his conviction, he relies upon an allegedly fatal defect in the indictment, error in the admission into evidence of a television set allegedly obtained through an unreasonable search and seizure, and various other trial errors.

The indictment charged that on or about October 19, 1965 at Cicero, Illinois the defendant "did unlawfully buy, receive, and have in his possession * * * a Muntz television set Number 18839 * * * which had been * * * stolen * * * from a motor truck and depot of Joseph T. Ryan Cartage Company, Inc., and * * * which did constitute an interstate shipment of freight from Muntz TV, Inc., Wheeling, Illinois, to Hager, Inc., Bridgeport, Connecticut; in violation of Title 18, United States Code, Section 659." The defendant points out that knowledge that the chattel had been stolen is an essential element of the crime charged. He contends that the indictment is fatally defective in failing to specifically allege that he possessed the television set knowing that it had been stolen. We believe the indictment, although imperfectly drafted sufficiently charged the element of knowledge to state an offense under the relevant portion of 18 U.S.C. § 659.

As we stated recently, "[a]n indictment must contain all the elements of the offense charged but it is not insufficient for imperfections of form which are not prejudicial." United States v. Richman, 369 F.2d 465, 467 (7th Cir. 1966). "The test of sufficiency is whether [the indictment] informs the defendant of what charges he must meet and protects him against double jeopardy" Id. In *Richman* we held that an allegation in an indictment charging a violation of 18 U.S.C. § 1341 that the defendant caused parcels to be mailed "for the purpose of executing" a scheme to defraud sufficiently charged the defendant with knowingly causing the items to be delivered by mail. Similarly, in United States v. Parisi, 365 F.2d 601 (6th Cir. 1966), vacated on other grounds sub nom. O'Brien v. United States, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (U.S. March 20, 1967), the Sixth Circuit held that an indictment charging the defendants with "unlawfully" removing property from a customs bonded area in

---

1. The defendant received a sentence of two years' imprisonment.

violation of 18 U.S.C. § 549 sufficiently alleged that the defendants acted knowingly and wilfully.

In the context in which it appears in the instant indictment, the word "unlawfully" supplies the required element of knowledge. Possession of a television set recently stolen from an interstate shipment could be "unlawful" under 18 U.S. C. § 659 only if the possesion were accompanied by knowledge that the set had been stolen. The recitations of the indictment necessarily imply knowledge and the statute is satisfied, if not by the statutory terms, by "words of similar import." United States v. Salliey, 360 F.2d 699, 701 (4th Cir. 1966); United States v. Martell, 335 F.2d 764, 765–766 (4th Cir. 1964). There is no question, in view of the language used, that the indictment adequately informed the defendant of the charge with which he was faced and that it protects him against a second conviction for the same offense. Nor can the defendant claim that he was prejudiced in any way by the absence of a specific allegation of knowledge. The defendant raised no objection to the omission at the trial. The question whether he knew that the television set had been stolen was the principal issue in the case and the jury was instructed that the defendant could not be found guilty unless such knowledge had been established.

■ A discussion of the defendant's contention that the television set ad-

mitted into evidence should have been excluded as the product of an unreasonable search and seizure requires a brief statement of the testimony given at a hearing on the defendant's motion to suppress evidence, which motion was later denied by the district judge. At approximately 9:00 a. m. on October 19, 1965. two special agents of the Federal Bureau of Investigation rang the doorbell of the second floor walk-up apartment in Cicero, Illinois in which the defendant, a married man, lived with a young woman named Mary Hilan, who was not the defendant's wife, and their nineteen month old daughter. The agents were conducting an investigation into the theft of a shipment of television sets, but had no search warrant. The defendant was not at home. Miss Hilan descended the stairs to the ground floor to answer the bell. The agents identified themselves. According to Miss Hilan's testimony, the agents preceded her up the stairs, stating *en route* that they wished to talk to her. When they reached the open door of the apartment, the agents caught sight of a television set in one of the rooms. Miss Hilan testified that the agents then expressed the belief that the set might be stolen property and requested permission to inspect it. Permission was granted. A few moments later, the agents asked if they could remove the back of the set to check the serial number. Miss Hilan again said yes. The set later proved to have been stolen.[2]

**2.** At the hearing on the motion to suppress evidence, following the testimony of Miss Hilan and the defendant, the district judge denied the motion on the ground that the defendant had no standing to challenge the reasonableness of the search. The judge's ruling was based upon his observation that "the law requires that a person in order to avail himself of such constitutional right be legitimately on the premises" and that because the defendant was living in the apartment with Miss Hilan "in open and notorious adultery," he was not "legitimately on the premises." This ruling by the district judge was erroneous, and the Government concedes that the defendant had the necessary standing to question the search and seizure of the television set by

virtue of his joint occupancy of the apartment. The "legitimately on the premises" test, drawn from Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), relates only to the right of the person claiming the privacy of certain premises to be where the search occurred, not to his moral fibre. Thus in *Jones*, the Court stated: "No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke

The FBI agent who testified gave a slightly different version of the events following the agents' identification of themselves to Miss Hilan. He testified that Miss Hilan invited the agents to hold whatever conversation they wished to have with her in the apartment because she did not wish to leave her child unattended. The agent testified that Miss Hilan was advised that the agents were conducting an investigation relating to stolen television sets; that they had received information that she might be in possession of one of these sets; that they desired to inspect the set in her apartment, but that she did not have to permit inspection of it because the agents did not have a search warrant. The agent testified that Miss Hilan offered her full cooperation, stating that she had nothing to hide, and in fact assisted the agents by providing a screwdriver to remove the back of the set.

The defendant maintains that under the circumstances just related Miss Hilan's consent to the examination of the television set was impliedly coerced. He also argues that her consent, even if voluntary, could not operate as a waiver of his constitutional right to be free from unreasonable searches and seizures. ·

■ First, we think that under either Miss Hilan's or the agent's version of what occurred in the defendant's apartment, the consent given by Miss Hilan to the agents' inspection of the television set was voluntary. No coercion was applied or threatened and no deception was practiced under either account. The agents did not go to the apartment for the purpose of making a search, nor did they demand entrance to conduct a search under color of their authority, as in Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), relied upon by the defendant. The occasion for requesting permission to inspect the television

set arose after the agents were admitted to the apartment. Nothing in Miss Hilan's testimony indicates that she felt constrained to cooperate or that her actions constituted an involuntary submission to authority. Under circumstances which were certainly more compelling than those facing Miss Hilan, we held that consent to a search without a warrant was freely and voluntarily given. United States v. MacLeod, 207 F.2d 853 (7th Cir. 1953). And see United States v. Sferas, 210 F.2d 69, 73–74 (7th Cir.), cert. denied, Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L. Ed. 1086 (1954); United States v. Gorman, 355 F.2d 151, 159 (2d Cir. 1965), cert. denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966).

■ The defendant's argument that Miss Hilan's consent could not affect his right to be free from unreasonable searches must also be rejected. In United States v. Sferas, supra, 210 F.2d at 74, we acknowledge the rule that "where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either." The rule has been applied by other courts to searches following consent given by the wife of the defendant, e. g. Roberts v. United States, 332 F.2d 892 (8th Cir. 1964), cert. denied, 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1965), and by a woman standing in the position of the defendant's wife, Nelson v. People of State of California, 346 F.2d 73, 77 (9th Cir.), cert. denied, 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965). The considerations most applicable to the third person's consent in such cases are not related to principles of agency connecting the defendant with the person acquiescing in the search, but rather concern the reasonableness, under all the circumstances, of a search consented to by a

the privacy of the premises searched."
Id.

The Government apparently recognized the weakness in the district judge's ruling on the motion to suppress. After the trial began, the Government was per-

mitted to reopen the hearing on the motion to offer the testimony of one of the FBI agents. On this appeal, both parties agree that the question of unreasonable search and seizure may be decided as a matter of law.

person having immediate control and authority over the premises or property searched. Cf., Roberts v. United States, supra 332 F.2d at 896–897.[3] Miss Hilan lived in the apartment and therefore had authority to consent to a search of it. Her consent was voluntary and the search was narrowly confined. Under these circumstances, the inspection of the television set was not an unreasonable search prohibited by the fourth amendment.

■ The defendant raises a further question with respect to his motion to suppress evidence. During the hearing on the motion, in order to establish his standing to object to the seizure of the television set, the defendant admitted that he lived with Miss Hilan in the apartment in which the set was found and that he paid the rent and utility bills. At the trial these admissions were admitted into evidence over an unspecified objection. On this appeal the defendant argues that such use of his testimony on the motion to suppress was a violation of his fifth amendment right not to be compelled to be a witness against himself.

This contention must be rejected for several reasons. First, it has often been held that testimony given by a defendant during an unsuccessful motion to suppress is admissible at his trial. E. g., United States v. Taylor, 326 F.2d 277 (4th Cir.), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964); Fowler v. United States, 239 F.2d 93, 95 (10th Cir. 1956); Kaiser v. United States, 60 F.2d 410, 413 (8th Cir.), cert. denied, 287 U.S. 654, 53 S.Ct. 118, 77 L. Ed. 565 (1932). Jones v. United States,

362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), cited by the defendant, is distinguishable. There the Court held that in cases where proof of possession itself is tantamount to conviction of the crime charged, a defendant need not allege and prove possession of property seized as a prerequisite to standing to make a motion to suppress evidence. Here the defendant's admission that he was a tenant in the apartment tended to establish only one element of the offense, possession, and not the additional requirement of knowledge that the television set was stolen. Second, the impact which the defendant's admissions on the motion to suppress had at the trial can only be assessed as minimal. Following the introduction of this testimony the Government adduced evidence of more critical admissions by the defendant, namely, the defendant's admissions that he purchased the television set for $200 from an applicant for employment in the defendant's trucking business, and that he assumed that the set was "hot" when he purchased it. Finally, the defendant did not assert his rights under the fifth amendment at the trial. He took the stand in his own behalf and was examined in detail concerning the purchase of the set. Under the circumstances, the defendant is not in a position to claim that any violation of his constitutional privilege against self-incrimination occurred through the introduction of his testimony on the motion to suppress.[4]

The remaining trial errors alleged by the defendant—that the district judge erred by unduly restricting the defendant's testimony and the cross-examina-

---

3. See Note, Consent Searches: A Reappraisal After Miranda v. Arizona, 67 Colum.L.Rev. 130, 148–50 (1967).

4. The defendant suggests that in accordance with the broad principles underlying the Supreme Court's recent decisions in Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), we should hold that testimony given by a defendant in attempting to establish a violation of his rights under the fourth

amendment on a motion to suppress and used against him at his trial is unconstitutional when the defendant is also claiming the protection of the fifth amendment. We find no occasion to extend *Garrity* and *Spevack* in this manner. As we have stated, the defendant's rights under the fifth amendment were not compromised under the facts in this case by his efforts to secure redress of his rights under the fourth amendment, nor did the defendant invoke the protection of the fifth amendment.

tion of witnesses and closing argument by defense counsel—have been considered. We find no merit in the defendant's arguments on these points and reject his contentions without further discussion.

The judgment of the district court is affirmed.