James Ray ANDERSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 9874.

United States Court of Appeals
Tenth Circuit.

Aug. 27, 1968.

Robert C. Resta, Albuquerque, N. M., for appellant.

John A. Babington, Asst. U. S. Atty., Albuquerque, N. M. (John Quinn, U. S. Atty., Albuquerque, N. M., with him on brief), for appellee.

Before PHILLIPS, HILL and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Appellant was convicted of bank robbery and incidental crimes.[1] This appeal is based upon the admission at trial of evidence of a voluntary oral statement made when the appellant was arrested, evidence obtained in a search of the appellant incident to his arrest, and evidence obtained in a search of the borrowed automobile driven by the appellant. The search of the automobile was conducted three or four hours after the arrest, when the appellant was in custody. Although the investigating officers did not obtain a warrant to search the automobile, they did obtain the written consent of the owner. All of the evidence called into question by this appeal was held to be admissible at a pretrial hearing on the appellant's motion to suppress.

On January 30, 1967, the appellant was in possession of a borrowed 1960 Ford Falcon loaned him by Alice Martinez. At 2:00 P.M., a time when the appellant was in possession of the automobile, the Cerrillos Road branch of the Bank of Santa Fe was robbed. The lone robber presented a note to a teller directing her to put her $5's, $10's, and $20's in a bag. The teller complied. The robber retrieved the note and departed. A description of the robber was broadcast to the Santa Fe police. Beginning at 3:15 P.M. police had the appellant under surveillance because he fitted the broadcast description.

Some time after 2:00 P.M. the appellant picked up the car owner's sister, Mrs. Carmen Probst, at her place of employment. The appellant and Mrs. Probst proceeded on foot on a shopping tour, purchasing luxury items. It was during this time that the police began surveillance. After about an hour appellant and his companion retrieved the borrowed car from a parking lot and started to drive down the street. The arresting officers followed in a police car and stopped appellant.

Appellant said he did not have a driver's license, refused to supply other identification, or tell the officers his name. Appellant was advised he was under arrest for driving without a license. Thereupon he pulled out his wallet from which a piece of paper fell to the ground. The policeman retrieved the paper, a note, which bore the inscription: "This is a hold up give me all your 5's 10's and 20's." The police immediately searched appellant and seized a considerable amount of money which was contained in his pockets. When the police proceeded to interrogate the woman companion, who remained in the car, appellant said, "[t]he girl had nothing to do with it. She was at work when I pulled it." The police inquired, "[p]ulled what?" and appellant replied, "[t]he bank job."

Appellant was taken to the police station, booked, and turned over to the Federal Bureau of Investigation on a charge of bank robbery and incidental crimes.

About 8:00 P.M. the F.B.I. obtained the written consent of the car owner and her sister to search the car. This search disclosed numerous items purchased during the shopping tour and a green jacket which fitted the description of the jacket worn by the robber. The jacket pocket contained a note upon which was written: "Lady! This is a holdup Put all your 5's 10's & 20's."

1. 18 U.S.C. § 2113(a), (b).

At a pretrial hearing on the motion to suppress the court ruled the question, "[p]ulled what?" and the answer thereto, were inadmissible. The statements did not reach the jury. Testimony relating the voluntary statement of appellant was admitted. Miranda v. State of Arizona, 384 U.S. 436, at page 478, 86 S.Ct. 1602, at page 1630, 16 L. Ed.2d 694 (1966) clearly stated: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." The statement objected to in this case was wholly independent of police questions, was volunteered on the scene at the time of arrest and therefore is admissible. Stone v. United States, 385 F.2d 713 (10th Cir. 1967).

The trial court admitted the evidence obtained in the search of the appellant when he was arrested. This court has said, "[t]he right of law enforcement authorities to investigate crime by inquiry from suspects must not be totally unbalanced by the right of the accused to refuse incrimination. The proper balance lies in voluntariness and the test lies in the totality of circumstance." Shultz v. United States, 351 F.2d 287, 289 (10th Cir. 1965).

Considering the totality of the circumstances related above along with the recent pronouncement of the Supreme Court of the United States in Sibron v. State of N. Y. (Peters v. State of New York), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (June 10, 1968) and Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (June 10, 1968), we find the reasonableness of the search of appellant's person at the time of arrest meets the tests therein laid down. The facts which the officers point to are the prior surveillance resulting from an accurate description of the accused which disclosed suspicious conduct culminating in the voluntary exposure of the holdup note that fell from appellant's wallet. Taken together with rational inferences, the police were warranted in the search of the appellant's person at the time of arrest.

Appellant contends that the search of the automobile was unreasonable, therefore, it was error to admit the evidence produced by that search. The search was conducted with the automobile owner's consent, but without a warrant, and clearly was not incident to the arrest.

The question posed by this fact situation is, in the absence of a search warrant, are the personal rights of the automobile owner to grant permission for the search superior or inferior to the personal rights of the appellant to withhold such permission? In the alternative, can the non-owner exclude evidence because his permission was not obtained? Clearly the court cannot recognize the rights of one of the parties without transgressing the rights of the other.

The courts have very specifically categorized the Fourth Amendment prohibition against unreasonable search and seizure as a personal right. Simmons v. United States, 390 U.S. 377, 389, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968); Warden, Md. Penitentiary v. Hayden, 387 U. S. 294, 304, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Galbraith v. United States, 387 F.2d 617 (10th Cir. 1968); Sumrall v. United States, 382 F.2d 651 (10th Cir. 1967). It is, however, also true that the Fourth Amendment right is a personal right with property right overtones. If this is not so then reasoning must be strained to reconcile the results of many cases where one party gives consent to a search which may be binding on a second party. Compare Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) and Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) with Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). Compare Simpson v. United States, 346 F.2d 291 (10th Cir. 1965) with United States v. Airdo, 380 F.2d 103 (7th Cir. 1967) and Johnson v. United States, 358 F.2d 139 (5th Cir. 1966). Only a resort to a gradation of personal rights on a property rights scale explains why Abel, who had just surrendered a hotel room, could

be bound by the consent to search given by the hotel while Stoner, who had not surrendered his room, could successfully suppress evidence which was found during a search permitted by the hotel. Certainly Abel's and Stoner's personal rights were the same, i. e., they both were entitled to have a magistrate issue a warrant for the search of a hotel room they had rented. In both cases the rights of the hotel owner in the property were identical. The only thing that changed was the quality of the property right; in Abel's case he had surrendered his short term, or daily leasehold while Stoner retained that property right. It may be assumed, however, that neither defendant had surrendered his Fourth Amendment right.

■ The conclusion is then that the present posture of the case law vis-a-vis the Fourth Amendment appears to be that the right is personal, but when two people have a property interest in the property to be searched, the waiver of the personal Fourth Amendment rights of one party may act as a binding waiver of the personal rights of the other party. Galbraith v. United States, 387 F.2d 617 (10th Cir. 1968); United States v. Airdo, 380 F.2d 103 (7th Cir. 1967); Johnson v. United States, 358 F.2d 139 (5th Cir. 1966); Roberts v. United States, 332 F.2d 892 (8th Cir. 1964);[2] United States v. Eldridge, 302 F.2d 463 (4th Cir. 1962); United States v. Sferas, 210 F.2d 69 (7th Cir. 1954); Cf. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Sumrall v. United States, 382

F.2d 651 (10th Cir. 1967); Rogers v. United States, 369 F.2d 944 (10th Cir. 1966).

■ As the cited cases indicate, consent to a search can be binding in the absence of a search warrant even though there was ample time and probable cause for obtaining a warrant. The consent is not binding, however, if obtained by coercion. Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (June 3, 1968).

■ The question remains, if several parties have coexistent interests in property, under what circumstances can the consent to a search by one party bind another party? Obviously, a trespasser could not give binding consent as against a homeowner; just as apparent would be the homeowner's right to give binding consent as against the trespasser. Although the cases are not uniform, it seems the present state of the law would, as a minimum, support the position that the holder of a right in property may give binding consent to a search as against a fellow property right holder where the consenting party is in possession when consent is given, if the consenting party has a property right equal or superior to the property right held by the absent bound party.[3]

■ Although the property right of the appellant in the 1960 Ford Falcon is not determined in the instant case, it seems clear that at the time consent was given for the search the property right of the owner, Miss Martinez, who was either in possession or entitled to posses-

2. Appeal of United States v. Roberts, 223 F.Supp. 49 (E.D.Ark.1963), which is an exhaustive opinion dealing with search and seizure.

3. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683 (1960) (hotel owner as against ex-guest); Galbraith v. United States, 387 F.2d 617 (10th Cir. 1968) (corporation as against corporate officer); United States v. Airdo, 380 F.2d 103 (7th Cir.) cert. denied 389 U.S. 913, 88 S.Ct. 238, 19 L.Ed.2d 260 (1967) (fornicator as against cohabiting adulteror); Johnson v. United States, 358 F.2d 139 (5th Cir.

1966) (automobile mortgagee in possession as against mortgagor out of possession); Roberts v. United States, 332 F. 2d 892 (8th Cir. 1964) cert. denied 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1965) (wife as against husband); United States v. Eldridge, 302 F.2d 463 (4th Cir. 1962) (gratuitous bailee of an automobile as against owner of automobile); United States v. Sferas, 210 F.2d 69 (7th Cir.) cert. denied sub nom. Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954) (partner as against partner).

sion, was superior to the property right of the appellant. It therefore follows that, based on present case law, when Miss Martinez waived her personal Fourth Amendment rights, she also effected a legally binding waiver of the appellant's Fourth Amendment rights because her property rights in the property to be searched were superior to the rights of the appellant in the same property.

Affirmed.