UNITED STATES of America ex rel.
William CABEY

v.

Joseph MAZURKIEWICZ,
Superintendent.

Misc. No. 69–27.

United States District Court,
E. D. Pennsylvania.

June 30 1969.

**12**

Duffy & Duffy, Philadelphia, Pa., for relator.

Arlen Specter, Dist. Atty., Philadelphia County, for respondent.

## OPINION AND ORDER

BODY, District Judge.

### Procedural History

Relator's confinement is pursuant to an aggregate sentence of ten (10) to thirty (30) years imprisonment, made on January 24, 1963, following a trial before Judge Lefever and a jury in Quarter Sessions Court of Philadelphia County on April 10, 11 and 12, 1962. Relator was convicted on Bill No. 1005, May Sessions 1961, of burglary, receiving 5 to 20 years beginning April 14, 1961; he was convicted on Bill No. 1006 of robbery and received 5 to 10 years to begin after sentence on Bill No. 1005. Relator received suspended sentences on Bills Nos. 1003 and 1004 charging conspiracy and crime of violence while armed. Bills Nos. 1008 and 1641, May 1961, were withdrawn.

Bills No. 1007 of May 1961 and No. 1686 of June 1961, charging possession of a firearm after conviction of a crime of violence were severed from Bills Nos. 1003–1006 which were tried three times. When Bills Nos. 1007 and 1686 were called for trial on March 27, 1962 a motion to suppress the gun in question was granted by Hagan, J. The Commonwealth did not oppose the motion, and without the gun in evidence the judge directed a verdict of acquittal.

The robbery bills were tried three times. At the first trial, on December 14, 1961, Alessandroni, P. J., granted a motion to suppress the gun. The jury was unable to agree. The second trial was before Trembath, J., on February 7–9, 1962. The gun was admitted at the second trial because of a failure to file a pretrial motion to suppress. Again the jury was unable to agree.

Before the third trial a suppression hearing was held before Judge Alessandroni. Although he had suppressed the gun at the first trial, he refused to suppress it again. The third trial was before Lefever, J., on April 10–12, 1962. The gun was admitted. The only identification of petitioner as one of the three robbers was by the maid, and petitioner's main defense was that she was in error. The jury found the relator guilty.

On December 28, 1962 relator's motions for a new trial and in arrest of judgment were denied. Commonwealth v. Cabey, 30 D. & C.2d 753 (Q.S. Phila. 1962); in this opinion the court en banc, Sloane, P. J., Reimel and Lefever, JJ., held that the question of petitioner's identification had been properly submitted to the jury. The court also held the gun had been properly admitted into evidence. The issue of the discrepancies of the maid's testimony at various stages of the proceedings was ruled a matter solely for determination by the jury.

On January 24, 1963 the relator was sentenced. On September 12, 1963 an equally divided Superior Court affirmed. Commonwealth v. Cabey, 201 Pa.Super. 433, 193 A.2d 663. Allocatur was denied by the Pennsylvania Supreme Court on December 23, 1963. On March 1, 1965 certiorari was denied by the United States Supreme Court, 380 U.S. 926, 85 S.Ct. 902, 13 L.Ed.2d 811.

The relator filed a writ of habeas corpus which was dismissed without hearing on November 23, 1965 by McClanaghan, J. On February 1, 1966 the Superior Court affirmed. Commonwealth ex rel. Cabey v. Rundle, 207 Pa. Super. 726, 216 A.2d 112. On July 30, 1966 the Pennsylvania Supreme Court granted allocatur and remanded "to the Court of original habeas corpus jurisdiction for consideration of petitioner's contention that evidence was introduced at trial over objection in violation of the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)."

On November 28, 1966 a hearing was held before Spaeth, J., who denied the writ of habeas corpus. Although relator's counsel raised both the perjury and identification issues, Judge Spaeth considered only the legality of search and seizure of the gun since this was apparently the order of the Pennsylvania Supreme Court. The Superior Court affirmed on November 21, 1967. 211 Pa. Super. 732, 234 A.2d 864. On May 10, 1968 the Pennsylvania Supreme Court granted allocatur and on November 27, 1968, with two Justices dissenting, affirmed. 432 Pa. 466, 248 A.2d 197.

Relator's petition before this Court has been considered upon the previous state court records and pleadings in this case.

### Facts

Relator was arrested on April 13, 1961, the day after the commission of the offense charged. The arrest took place at about 1:00 P.M. at the corner of 21st Street and Chelten Avenue, Philadelphia, Pennsylvania. The police searched relator and took from him his wallet, a ring with some keys on it, and a receipt book and some money. At relator's request the receipt book and money were given to relator's employer, Mr. Reimers, and his wallet was given to his wife. The police retained the key ring in order to open relator's car with one of the keys. It was subsequently returned to relator's wife.[1] At this point the police did not know to what locks the other keys belonged.

Because of his wife's illness, relator had been staying with his wife at the home of his in-laws. As a result, relator had leased from his employer, Mr. Reimers, two adjoining garages to be used to store temporarily household goods and furniture. (Relator stated at his habeas corpus hearing that he alone had purchased the goods stored there.) The garages were about two blocks from the relator's in-laws' home.

The lease for the garages was oral and existed solely between the relator and Mr. Reimers. The only key to the garages was placed on relator's key ring.[2]

A couple hours after relator's arrest, Detectives Joseph Hunt and Vincent Heeney[3] went to the home of relator's wife's parents. Detective Hunt testified on March 27, 1962 before Judge Hagan that:

"I asked her about the gun, your Honor; and she said as far as she knew, she knew nothing about a gun. She said, 'All our belongings are down in the garage. If you care to look, here are the keys.' I said, 'Do I need a search warrant?' She said, 'No. I have nothing to hide', and gave me the keys." N.T. p. 12, 3/27/62

Detective Hunt also testified at a subsequent hearing that Mrs. Cabey would

---

1. It was stipulated by counsel before Spaeth, J., that the relator had exclusive control of the key ring before arrest, that there was one garage key and one car key on the ring, and that counsel was unable to locate anyone who knows who gave the key ring to Mrs. Cabey.

2. There is some question whether there were two keys to two different locks on the garage doors. See Detective Hunt's testimony, April 6, 1962. The relator, by counsel, and the state stipulated before Spaeth, J., that there was only one key to the garages.

3. Detective Heeney was one of the arresting officers.

not accompany them to the garage and that she asked Mr. Reimer to go with them. N.T. 4/6/62, App. 64, Appendix G, p. 4. Mr. Reimer went to the garage while the officers searched it, but he did not enter it.

Detective Hunt testified that there was time to get a search warrant. He also stated that although they knew a gun was involved in the robbery, he had no information upon which to base a belief that the .38 caliber gun would be found in the garage inside a washing machine.

### Conclusions of Law

■ This Court will grant the writ of habeas corpus because of the illegality of the police search and seizure of the gun found in the washing machine which was stored in a garage rented by the relator. This decision is based upon the conclusion that relator's wife was incapable in law to consent to and allow the police to search the above-mentioned premises.

While the police clearly did not coerce Mrs. Cabey into handing over the key to the garage to be searched, or in consenting to the search, this Court believes that Mrs. Cabey simply did not have either the express authority of the relator to waive his rights with respect to the search, or the legal right to consent to the search through her own control over the premises to be searched.[4]

■■ Although there is no evidence that the relator intended to exclude his wife from the garage, more than this is necessary to establish express authority to consent to a waiver of the Fourth Amendment rights. There is no evidence that the relator intended his wife to act in his place while he was in police custody. The marital relationship certainly cannot provide the authority to waive constitutional rights.

■ The relator's wife's possible interest in certain of the goods stored in the garage is not sufficient interest upon which to base her independent right to consent to a search of the garage. The instant case falls within the prohibitions of Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) and Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) where a hotel clerk's and landlord's right, respectively, to control the premises were held to be insufficient for a consent search. The Supreme Court stated in Stoner v. California, supra:

"Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority'." 376 U.S. p. 488, 84 S.Ct. p. 892.

■ While possession of the key and the marital relationship might indicate that Mrs. Cabey had the apparent authority to consent to the search, this Court must look behind appearances where constitutional rights are involved. In so doing, it becomes clear from the evidence that the relator's exclusive control over the key to the garage was never voluntarily relinquished by him. How the key came into Mrs. Cabey's possession is unclear, but there is no indication that the relator directed that the keys be given to her. It is also certain from the evidence that the relator was the sole lessee of the garage which was located at least two blocks from the residence of Mrs. Cabey's parents.

The case of Stein v. United States, 166 F.2d 851 (9th Cir., 1948), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L. Ed. 1768 (1948), is inapposite since, there, the consent by the defendant's wife was bottomed on the fact that she "had the same right of possession and occupancy" of the premises in question

---

4. While Katz v. Uited States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) would seem to indicate only waiver is possible, Frazier v. Cupp, 394 U.S. 731,

89 S.Ct. 1420, 22 L.Ed.2d 684 (April 22, 1969) necessarily lends support to a consent-search, based upon control over the property.

as the defendant. (p. 855) In Roberts v. United States, 332 F.2d 892 (8th Cir., 1964), cert. denied, 380 U.S. 980, 85 S. Ct. 1344, 14 L.Ed.2d 274 (1965), the court defined the issue as "a question of the wife's own rights to authorize entry into premises where she lives and of which she had control." (pp. 896–897) The court went on to find that the defendant's home or "the premises were under the immediate and complete control of Mrs. Roberts." (p. 897)

The Supreme Court recently ruled in Frazier v. Cupp, supra, that the defendant had "assumed the risk" that his friend might allow someone to search his duffel bag. The bag was used jointly by the defendant and his friend and was left intentionally at the friend's home. This Court does not believe that the relator in the instant case "assumed the risk" of the search.

There is no evidence, as stated before, that relator in any way gave his wife control over the garage.

 In addition to Mrs. Cabey's lack of authority to consent to the search based upon her lack of control over the premises, this Court believes that even if Mrs. Cabey could validly consent to the search, there did not exist "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The police did not fairly warn Mrs. Cabey of the rights that were being relinquished. Her statement to the police that "I have nothing to hide" would seem to indicate that either she did not understand the impact of the search as concerned her husband's interests, or that she was actually motivated by malice toward her husband.

This Court also holds that the perjury issue was adequately presented and heard in the state court and that it was properly decided to be a matter solely for the determination by the jury. In view of this Court's decision to grant the writ, it makes no decision with regard to the propriety of the identification issue although some doubt exists as to whether it has been adequately presented to the state courts before so as to adequately exhaust state remedies.

This Court had before it all state court trial and hearing records.

## ORDER

And now, this 30th day of June, 1969, it is ordered that the petition of William Cabey for a writ of habeas corpus be and it is hereby granted. The execution of the writ shall be stayed for a period of ninety (90) days to afford the Commonwealth an opportunity to appeal or to re-try the relator. In the event that the Commonwealth appeals, any further stay of this Order beyond ninety (90) days from the date hereof shall be sought only in the Court of Appeals. Absent an appeal and further stay within ninety (90) days, or a re-trial of petitioner within ninety (90) days, at the expiration of said period, relator shall be released from custody.