UNITED STATES of America ex rel.
William CABEY H–2519

v.

Joseph MAZURKIEWICZ, Superintend-
ent, State Correctional Institution
at Philadelphia, Appellant.

No. 18134.

United States Court of Appeals,
Third Circuit.

Argued Feb. 6, 1970.

Decided July 29, 1970.

Gibbons, Circuit Judge, dissented and filed opinion.

Paul R. Michel, Asst. Dist. Atty. (James D. Crawford, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellant.

Sara Duffy, Duffy & Duffy, Philadelphia, Pa., for appellee.

Before FREEDMAN, ALDISERT and GIBBONS, Circuit Judges.

OPINION OF THE COURT

FREEDMAN, Circuit Judge.

The district court granted relator's petition for habeas corpus,[1] and respondent has appealed.

Relator was convicted on a third trial in the Court of Quarter Sessions of Philadelphia County of aggravated robbery, burglary, conspiracy and the commission of a crime of violence while armed, for which he was sentenced to imprisonment for terms aggregating 10 to 30 years.

The petition assigned three grounds for relief. One was that the identifica-

1. United States ex rel. Cabey v. Mazurkiewicz, 312 F.Supp. 11 (E.D.Pa.1969).

tion testimony of a maid employed by the victims was perjured. The district court held that this was a matter which the jury had determined at the trial in the state court. The second claim was that the identification was based on a line-up which violated relator's rights under the Fourteenth Amendment. The district court doubted whether there had been an exhaustion of state court remedies on this claim and did not decide it because it granted the writ on the third claim, that the introduction in evidence of a gun violated relator's rights under the Fourth Amendment because it was obtained as a result of an invalid search. We are thus brought to a consideration of the validity of the search and seizure of the gun.

Preliminary to the first trial in the state court, Alessandroni, P. J., granted a motion by relator to suppress the gun, and the ensuing trial ended in the jury's disagreement. On the second trial before another judge, although the gun was admitted in evidence because relator failed to file a pretrial suppression motion, the jury once more disagreed. Prior to the third trial relator was brought to trial on two other indictments, which had been severed from the present indictments, charging possession of a firearm after conviction of a crime of violence. Those charges arose from the same factual circumstances as the present charges and involved the use of the same gun. Relator's motion to suppress the gun as evidence at the trial of those indictments was granted by Hagan, J., without opposition by the Commonwealth, and without the evidence of the gun the judge directed a verdict of acquittal.

Before the third trial on the present indictments another suppression hearing was held on a motion by relator, this time again before Alessandroni, P. J., who now refused to suppress the evidence. At the trial which followed before another judge the gun was admitted in evidence and relator was found guilty. Motions for a new trial and arrest of judgment were denied by the Common Pleas Court en banc,[2] and the Superior Court, being equally divided, affirmed relator's conviction.[3] The Supreme Court of Pennsylvania denied allocatur,[4] and the Supreme Court of the United States denied certiorari.[5]

Relator then sought habeas corpus in the state courts. His petition was denied without a hearing by the Common Pleas Court and the denial was affirmed by the Superior Court.[6] The Supreme Court of Pennsylvania, however, in an unreported order, reversed the Superior Court, vacated the order of the Common Pleas Court and remanded the record for consideration of relator's contention that the introduction of the gun in evidence violated his constitutional rights.

On remand the Common Pleas Court held an evidentiary hearing and limiting its consideration to the legality of the search and seizure of the gun in accordance with the mandate of the Supreme Court, again denied the petition. It held that relator's wife, who had authorized the police to enter and search the garage where they found the gun, had an independent right to consent to the search, which theretofore was valid.[7] The Superior Court affirmed per curiam,[8] and the Supreme Court of Pennsylvania, with two Justices dissenting, affirmed.[9]

2. Commonwealth v. Cabey, 30 Pa.Dist. & Co.2d 753 (Phila.Co.1962).

3. 201 Pa.Super. 433, 193 A.2d 663 (1963).

4. 206 Pa.Super. lii (1963).

5. 380 U.S. 926, 85 S.Ct. 902, 13 L.Ed.2d 811 (1965).

6. Commonwealth ex rel. Cabey v. Rundle, 207 Pa.Super. 726, 216 A.2d 112 (1966).

7. The opinion of the Court of Common Pleas is unreported.

8. Commonwealth ex rel. Cabey v. Rundle, 211 Pa.Super. 732, 234 A.2d 864 (1967).

9. 432 Pa. 466, 248 A.2d 197 (1968).

Relator claims at the outset that the decision of Hagan, J., suppressing the gun on the other two indictments was res judicata of the same issue on these indictments and that the Commonwealth therefore was collaterally estopped from relitigating the question at the third trial. Although collateral estoppel has constitutional significance in criminal cases,[10] in the view we take of the case it is unnecessary to consider it here.

Relator was taken into custody at about 1 p.m. on April 13, 1961. The police searched him and removed his wallet, key ring, a receipt book and some money. At his request they turned over the receipt book and money to his employer, Mr. Reimers, and the wallet to his wife. They retained the key ring and with one of the keys opened relator's automobile. Later the same day, without any request by the relator that they do so, the police returned the key ring to his wife, not knowing when they did so that one of the keys on it opened the lock of the door of the garage where the gun was found. Later that afternoon two detectives called on relator's wife at the home of her parents. She and relator were temporarily residing there because she was ill. They intended to find a new home on her recovery, but meantime, they had temporarily stored their household goods in the garage[11] about two blocks from her parents' home.

The detectives asked Mrs. Cabey if her husband owned a gun. She replied that she did not know but that all her belongings and her husband's were in the garage, where they could look if they wished. She offered them the key to the garage which she had received but a short time before from another member of the police. When one of the detectives asked if he needed a search warrant, she replied that he did not, and that she had nothing to hide. She thereupon gave him the key, and with it the detectives entered the garage where they found the gun in a washing machine.

It is admitted that the detectives could not have obtained a search warrant because they had no probable cause to believe the gun was hidden in the garage. It is also undisputed that the lease for the garage was an oral one entered into between relator alone and Mr. Reimers, and that relator kept the only key to the garage on his key ring.

The district court held the search invalid on the ground that relator's wife did not have his authority to consent to the search nor any independent legal right of her own to do so, and that her consent was not a knowing waiver because the police did not fully warn her of the effect of the search on her husband's interests.

The general principle is that a valid search must be made pursuant to a warrant, which in turn requires a showing to the satisfaction of a disinterested judicial officer of the existence of probable cause.[12] Exceptions to this principle

10. See Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

11. There were actually two adjoining garages, but there was only one door by which to enter them.

12. In Chimel v. California, 395 U.S. 752, 761, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969), the Court quoted McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948), as follows:
"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has

interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search war-

have been created out of necessity, as in cases where an incidental search in the course of a lawful arrest is required to protect the police from dangerous weapons on a defendant's person, or to prevent the destruction of evidence in a defendant's possession or under his immediate control.[13] A similar exception exists where there is probable cause to believe that the fruits or instrumentalities of a crime are in a vehicle which is readily removable.[14] Such cases, however frequent they may be, remain exceptions based on necessity and do not diminish the pervasiveness of the general principle of the Fourth Amendment that a search and seizure ordinarily must be based upon a warrant issued on probable cause.

■ The present case does not involve a search based on necessity. Rather it is one where the right to be free from a warrantless search is claimed to have been waived. The burden of proving the waiver of this constitutional right rests on the state. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

Relator did not personally consent to the search of the garage, nor is there any contention that he authorized his wife to do so on his behalf. The question therefore is whether she had an in-dependent right of her own to consent to the search.

The right of one party to consent to a search which affects the interest of another derives from the consenting party's equal right of possession or control of the same premises or property as the other. Such cases fall into three classes. In one class a party having a joint right of control consents to a search directed only at himself and not at the other, but it discloses evidence harmful to the other.[15] A second class consists of those cases in which one having a joint right of control consents to a search which he knows is directed at the other although he does so in the independent exercise of his right of joint control. The justification of the search in both these classes of cases results from the impossibility of severing the joint right of control and the undesirability of permitting the exercise of the right of one to be limited by the right of the other. An illustration of the latter class of cases is Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654 (1921), where the Supreme Court reserved the question of the right of a wife who had an equal right of possession of a home and store to consent to a search directed against her husband. The Court has not since had the question before it,[15a] but this

---

rant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." See Terry v. Ohio, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). See also Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and cases cited therein.

13. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034 (1969). A related exception is the "stop and frisk" case. See Terry v. Ohio, 392 U.S. 1, 20-27, 88 S.Ct. 1868 (1968).

14. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Chimel v. California, 395 U.S. 752, 764, n.

9, 89 S.Ct. 2034 (1969); Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

15. See, e.g., Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

15a. Certiorari has recently been granted in Coolidge v. New Hampshire, No. 323, in which one of the questions involved is whether a wife can validly consent to a search of her husband's guns and clothing while he is in police custody. See 39 U.S. L.W. 3003 (July 7, 1970). For a student comment on the issue in a different stage of the case, see 79 Harv.L.Rev. 1513 (1966).

court [16] and the circuits generally [17] have accepted the principle that consent by a third party in such cases is valid.

A new and intruding element which has not been isolated heretofore may be said to distinguish a third class of cases. This element is the consenting party's agreement to the search out of motives of hostility to the other, made with the intent to harm him by an antagonistic consent. Where it is possible to identify this element a serious question would arise whether the right to consent is not spent when it reaches this point of deliberate antagonistic intrusion on the rights of the other who has an equal right to possession or control.[18] This would be especially true where a wife intentionally acts against her husband's interest, since she would not be acting in harmony with the marital relationship from which her joint right of ownership or control is derived, but in antagonism to it.

In the present case there is some intimation that the wife's consent to the search may have been the product of hostility to her husband.[19] But it is unnecessary to determine whether this indication is factually justified, and if so, whether her consent is thereby rendered ineffective, for the case may more readily be determined on conventional principles. It is fundamental that the doctrine which recognizes the validity of a third party's consent to a search must be applied guardedly to prevent erosion of the protection of the Fourth Amendment, since it makes no requirement of the existence of probable cause for the search and does not constitute an exception based on necessity.[20]

In the present case the wife did not have an equal right of access to the garage and therefore had no independent right of her own to consent to the search. It was her husband who was the sole lessee and who had retained the

16. See United States ex rel. McKenna v. Myers, 232 F.Supp. 65 (E.D.Pa. 1964), aff'd 3 Cir., 342 F.2d 998, cert. denied 382 U.S. 857, 86 S.Ct. 111, 15 L.Ed.2d 95 (1965).

17. See United States v. Thompson, 421 F. 2d 373, 375–376 (5 Cir. 1970); United States v. Mackiewicz, 401 F.2d 219, 223–224 (2 Cir.), cert. denied 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968); Pasterchik v. United States, 400 F.2d 696, 699 (9 Cir. 1968), cert. denied 395 U.S. 982, 89 S.Ct. 2142, 23 L.Ed.2d 770 (1969); Anderson v. United States, 399 F.2d 753, 755–757 (10 Cir. 1968); United States v. Alloway, 397 F.2d 105, 110 (6 Cir. 1968); United States v. Airdo, 380 F.2d 103, 106–107 (7 Cir.), cert. denied 389 U.S. 913, 88 S.Ct. 238, 19 L.Ed.2d 260 (1967); Roberts v. United States, 332 F.2d 892, 896–897 (8 Cir. 1964), cert. denied 380 U.S. 980, 85 S.Ct. 1344, 14 L. Ed.2d 274 (1965); Fredricksen v. United States, 105 U.S.App.D.C. 262, 266 F.2d 463 (1959). See also United States v. Eldridge, 302 F.2d 463 (4 Cir. 1962). See generally, Authority to Consent for Another to Search or Seizure, 31 A.L.R. 2d 1078 (1953). Cf. Comment, Third Party Consent to Search and Seizure, 33 U.Chi.L.Rev. 797 (1966).

18. Cf. Stein v. United States, 166 F.2d 851 (9 Cir.), cert. denied 334 U.S. 844, 68 S. Ct. 1512, 92 L.Ed. 1768 (1948).

19. The record shows that relator's wife subsequently divorced him. The district judge found that in consenting to the search relator's wife either did not understand its impact on his interests or was motivated by malice toward him.

20. Thus it has been held that one who has an equal right of control or possession of premises generally does not thereby have authority to consent to a search of an area on the premises which is set aside for the exclusive use of the other. See Reeves v. Warden, 346 F.2d 915, 924–926 (4 Cir. 1965); Holzhey v. United States, 223 F. 2d 823 (5 Cir. 1955); United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019 (1951). See generally Cunningham v. Heinze, 352 F.2d 1, 4–5 (9 Cir. 1965), cert. denied 383 U.S. 968, 86 S.Ct. 1274, 16 L.Ed.2d 309 (1966); Rees v. Peyton, 341 F.2d 859, 862–863 (4 Cir. 1965).

Similarly, the Supreme Court has held that a landlord may not consent to a search of premises leased to his tenant, Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), and that a hotel clerk may not consent to a search of a guest's room despite the hotel's continuing right of access to it, Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

single key in his possession until the police took it from him on his arrest and then turned it over to her without his authority. There is no evidence that relator ever gave the key to his wife on an earlier occasion so that she could enter the garage, and even if there were, it would remain true that he still had power to refuse a subsequent request.

We need not consider whether the wife would have the right in certain circumstances to break into the garage in order to exercise some right to the use of the household goods. For here even if such right existed,[21] it was never exercised. In disallowing the search of a guest's room based on the consent of a hotel's clerk, the Supreme Court said in Stoner v. California, 376 U.S. 483, 489, 84 S.Ct. 889, 893 (1964):

> "[T]he Court has held that a search by police officers of a house occupied by a tenant invaded the tenant's constitutional right, even though the search was authorized by the owner of the house, who presumably had not only apparent but actual authority to enter the house for some purposes, such as to 'view waste.' Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed. 828. The Court pointed out that the officers' purpose in entering was not to view waste but to search for distilling equipment, and concluded that to uphold such a search without a warrant would leave tenants' homes secure only in the discretion of their landlords."

 Here the police armed relator's wife with his key and thereby gave her the means to enter the garage, which she transferred to them. Since the means of entry to the garage were made available to her by the police, her use of the key did not constitute the exercise of an independent right of her own but rather the unauthorized use of a means of access taken from her husband without his consent and employed without his authority. We therefore agree with the conclusion of the district court that the search of the garage and the seizure of relator's gun violated the Fourth Amendment.

It thus becomes unnecessary to consider the additional ground on which the district court justified its conclusion, that the wife's consent was not a knowing waiver because the police did not fully warn her of the possible effect of the search of her husband's rights.

The order of the district court will be affirmed.

GIBBONS, Circuit Judge (dissenting).

I respectfully dissent on two grounds from the views expressed in the majority opinion. First, I would limit the majority's implication that Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L. Ed.2d 469 (1970), is relevant to the instant case. Rather, I think it clear that nothing in *Ashe,* or Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), applying collateral estoppel after final judgment in criminal cases, deals with the separate issue of law of the case, a discretionary doctrine which need not be applied while a case is still pending, as is true here. Second, I disagree that the gun was improperly received into evidence and would, therefore, reverse the district court's grant of habeas corpus relief.

The rule barring use of evidence secured through illegal search and seizure was judicially imposed on the federal courts in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), as a "deterrent safeguard," Mapp v. Ohio, 367 U.S. 643, 648, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), against practical nullification of the Fourth Amendment. *Mapp* subsequently required its application by state courts

---

21. Relator testified without contradiction that he alone purchased all the goods stored in the garage. He also contends that under Pennsylvania law household goods in the joint possession of a husband and wife who are living together are presumptively the property of the husband. See Mulligan's Estate, 426 Pa. 374, 232 A.2d 758 (1967).

after experience under Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), which had imposed on the states merely the substantive Fourth Amendment protections, proved that remedies other than exclusion were worthless to protect the rights guaranteed therein, *Mapp, supra* at 651–652, 81 S.Ct. 1684. See People v. Cahan, 44 Cal.2d 434, 282 P.2d 905 (1955). In contrast to other constitutional protections, e. g., right to counsel, Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), or an accused's right to effective exclusion of an involuntary confession, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the remedial Fourth Amendment exclusionary rule does not go to "the very integrity of the fact-finding process," Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965). See also, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). The evidence excluded "because the constable blundered," People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926) (J. Cardozo), cert. denied, 270 U.S. 657, 46 S.Ct. 353, 70 L.Ed. 784 (1926), is clearly competent and reliable while coerced confessions, for example, are of doubtful trustworthiness.

An effective prophylactic rule, however, must be certain in operation and comprehensible to the class of persons upon whom it is designed to operate—in this case police officers in the field. An absolute warrant requirement would satisfy these criteria but the courts have declined to go so far, recognizing instead three categories of exceptions: searches incident to valid arrests, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653 (1950); searches of readily removable motor vehicles when probable cause exists to believe they contain fruits or instrumentalities of crime, Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970);

Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); and searches consented to either by the subject or, in limited circumstances, by a third party. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

Third party consent has been justified on the ground either of implied authority to waive the subject's rights or of the consenting party's independent possession and control of the searched premises. I submit, however, that the former rationale is untenable as applied in most situations and particularly in all instances of attempted waiver of one's spouse's rights. Only an attorney realistically possesses implied authority to waive another's constitutional rights and in practical experience the legal niceties of the existence of implied authority are too complex to be pragmatically determined by a policeman in the field. On the other hand, the latter rationale involves simply a waiver of the consenting party's own rights regardless of the simultaneous effect upon another's similar rights.

The right of a third party to consent to a search of jointly controlled premises has been judicially recognized in circumstances involving varied relationships between the consenting party and the party against whom evidence is discovered: spouses, United States v. Thompson, 421 F.2d 373 (5 Cir. 1970); United States v. Alloway, 397 F.2d 105 (6 Cir. 1968); Roberts v. United States, 332 F. 2d 892 (8 Cir. 1964), cert. denied, 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1965); mistresses and their lovers, United States v. Airdo, 380 F.2d 103 (7 Cir. 1967), cert. denied, 389 U.S. 913, 88 S.Ct. 238, 19 L.Ed.2d 260 (1967); Nelson v. People of State of California, 346 F.2d 73 (9 Cir. 1965), cert. denied, 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965); Stein v. United States, 166 F. 2d 851 (9 Cir. 1948), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948); hosts and temporary houseguests, Pasterchik v. United States, 400 F.2d 696 (9 Cir. 1968), cert. denied, 395

U.S. 982, 89 S.Ct. 2142, 23 L.Ed.2d 770 (1969); Weaver v. Lane, 382 F.2d 251 (7 Cir. 1967), cert. denied, 392 U.S. 930, 88 S.Ct. 2289, 20 L.Ed.2d 1390 (1968); Fredricksen v. United States, 105 U.S. App.D.C. 262, 266 F.2d 463 (1959); roommates, Wright v. United States, 389 F.2d 996 (8 Cir. 1968); automobile bailors and bailees, Anderson v. United States, 399 F.2d 753 (10 Cir. 1968); United States v. Eldridge, 302 F.2d 463 (4 Cir. 1962); parents and children, United States v. Stone, 401 F.2d 32 (7 Cir. 1968); joint tenants, United States v. Thoresen, 281 F.Supp 598 (N.D.Cal. 1967); business partners, United States v. Sferas, 210 F.2d 69 (7 Cir. 1954), cert. denied, 347 U.S. 935, 74 S.Ct. 630, 98 L. Ed. 1086 (1954). In each of these instances, courts have deemed warrantless searches reasonable, hence constitutionally permissible, if the consenting party was clothed with lawful possession and control of the articles seized or the premises on which they were located, United States v. Eldridge, *supra*. Together, the holdings suggest a rule approving official searches made in reasonable reliance upon the consent of one who, in common experience, has an independent right to possession and control of premises, whether the search is initially directed at the consenting party or someone else.

In the instant case, Mrs. Cabey, as wife of the defendant, was superficially someone who could reasonably be assumed to enjoy full access to household items acquired as an incident of her marriage. Spouses generally share such rights regardless of which has actually purchased the articles. Moreover, it is usual for each to possess means of access to them when not in daily use. It is illogical to require the officers to have considered whether this particular wife had technical title to the storeroom in which her and her husband's belongings were temporarily housed. Thus, the individual in whose name the garage was leased, the number of keys extant, and the method by which Mrs. Cabey acquired the particular key which admitted the officers to the garage should not

have occasioned specific concern at the time nor have been determinative after the fact of the admissibility of evidence seized therefrom. Law officers should neither be required nor expected to "engage in * * * metaphysical subtleties in judging the efficacy of (a) consent." Frazier v. Cupp, *supra*.

In *Frazier*, the Supreme Court "dismissed rather quickly" the petitioner's contention of error in the admission of evidence against him seized from a duffel bag jointly used by petitioner and his cousin and left in the cousin's home. The cousin consented to a warrantless search. In holding that the cousin, as a joint user, "clearly had authority to consent to (the bag's) search," the Court stated that "petitioner, in allowing (his cousin) to use the bag and in leaving it in his house, must be taken to have assumed the risk that (his cousin) would allow someone else to look inside." *Frazier, supra*, 394 U.S. at 740, 89 S.Ct. at 1425. Clearly, the "risk" involved is that someone with an equal or similar Fourth Amendment right will consent to a warrantless search of the place of concealment chosen by one against whom evidence thereby discovered is used. And if a joint user of premises is deemed to have assumed the risk of searches allowed by fellow users, then the majority's contention that Mrs. Cabey's possible hostility toward her husband distinguishes their situation from that of all other joint users of property, must be rejected. The suggested subjective antagonism between the two is irrelevant to the risk each assumed by virtue of their objective relationship and the reasonable assumptions others can be expected to make concerning it. Cases cited by the majority in which such assumptions have been held unreasonable, e.g., Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Cunningham v. Heinze, 352 F. 2d 1 (9 Cir. 1965), cert. denied, 383 U.S. 968, 86 S.Ct. 1274, 16 L.Ed.2d 309 (1966); Reeves v. Warden, 346 F.2d 915

(4 Cir. 1965); Holzhey v. United States, 223 F.2d 823 (5 Cir. 1955); United States v. Blok, 188 F.2d 1019, 88 U.S. App.D.C. 326 (1951), are distinguishable. Each involved either areas or articles reserved for the exclusive use of a party other than the consenting party, or a consenting party who did not have a right of access co-equal to that of the non-consenting party; and these circumstances were reasonably obvious or explicitly revealed to the officers conducting the search.

I therefore conclude that the detectives' assumption that Mrs. Cabey was legally competent to waive a warrant for search of the garage was not so unreasonable as to necessitate the sanction of freeing a man in whose conviction of guilt no taint in the fact-finding process is suggested. This approach does not turn on rejection of the notion that the Fourth Amendment protects privacy rather than property. It concentrates instead on whether or not the person consenting has a right of either kind which he is competent to waive. Moreover, if courts will not apply some kind of rule of reason to police reliance on the third party's right to consent, then the only feasible alternative is insistence upon consent by all parties having rights of possession and control. The Supreme Court has declined to go so far.