The People of the State of Illinois, Plaintiff-Appellee, v. James Ciconte, Defendant-Appellant.

Gen. No. 52,237.

First District, Fourth Division.

July 31, 1968.

Rehearing denied and opinion modified January 8, 1969.

Jerome Rotenberg, Rotenberg, Schwartzman & Richards, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

After a jury trial the defendant was convicted of possession of marijuana in violation of chapter 38, section 22–3 of Illinois Revised Statutes 1963, and sentenced to the Illinois State Penitentiary for a period of not less than five nor more than seven years.

CONTENTION ON APPEAL: That the defendant was not proved guilty beyond a reasonable doubt; that defendant was not proved guilty beyond a reasonable doubt because of the failure of any State witness to identify him in open court; that the trial court improperly limited the cross-examination of certain State witnesses by the defendant; that the closing argument of the prosecutor was prejudicial; that the prosecutor improperly commented to the jury on the defendant's failure to testify; and that there was reversible error in the instructions given by the court and its refusal to instruct as requested by the defendant.

EVIDENCE: On February 17, 1966, several agents of the Federal Bureau of Investigation went to 165 North 22nd Avenue, Melrose Park, Illinois. Agent Ramon Stratton, who had been with the F. B. I. for 15 years, knocked on the rear door of the lower level of the house, and presented a search warrant to Mrs. Elizabeth Ciconte (whom Stratton believed to be the mother of the defendant) who answered the door. The second floor of the building in question has an entrance separate and distinct from the first floor, and Mrs. Ciconte went with the agents to the second floor where she unlocked the door to a large room. There the agents observed a number of articles of clothing, principally men's, but also some women's clothing, items of wood and workmen's tools, and cardboard cartons. Stratton found a blue-gray overnight case in which was a brown paper sack containing one or two pounds of a green seed, a tobacco can, a measuring spoon, over 100 small brown manila envelopes, and a jar containing over 100 capsules or pills. Under the bed was

a cardboard carton inside which was a large amount of stalks, crushed green plants and seeds, approximately three pounds in weight. There was also a plastic bag with more than a pound of a crushed green plant and seeds, samples of which were taken. Stratton also found about 300 automobile ignition keys and a billfold which contained a driver's license issued to James Angelo Ciconte at 165 North 22nd Avenue, together with a number of other personal identification cards in the name of James Angelo Ciconte.

The next day, February 18, Stratton saw the defendant in apartment 705 at 18 East Elm Street, in Chicago. The defendant showed him a copy of the search warrant which Stratton had left at the Melrose Park house the day before, and Stratton also saw the automobile keys, various tools, and the same wallet he had seen the day before at the Melrose Park address, containing the driver's license and identification cards of James Angelo Ciconte. The automobile keys were in a small corrugated box, as they had been when Stratton saw them the previous day in Melrose Park.

On cross-examination Stratton stated that he did not see any workmen on the premises in Melrose Park, but the building appeared to be undergoing repairs. He stated that he knew the tools he saw at 18 East Elm Street were the same ones he had seen the day before in Melrose Park because he had marked them.

On redirect examination Stratton testified that at the Elm Street apartment there was one pair of men's shoes, one pair of socks, one pair trousers, one or two shirts, one jacket and one outside jacket, and three pairs of gloves, at the time the defendant was arrested. Fingerprints of the defendant were found on items in the room.

Special Agent James L. Mahan testified that there were two entrances to the second floor of the Melrose Park

4

house—one at the front and one at the rear; that there was an unmade bed in the room with sheets and covers on it. He testified to the finding of the light blue-gray case and its contents, and to the finding of a large cardboard box under the bed in which were two or three pounds of a greenish type plant. He also testified to the finding of the tools, the automobile keys—which he said were on a wire ring in a cardboard box—and the billfold with the driver's license and identification cards of James Angelo Ciconte.

Donald Norton, an inspector with the Illinois Division of Narcotics, testified as a witness for the State that he had received from Agent Stratton three manila coin envelopes (People's Exhibits 2, 3 and 4) containing the crushed green plants.

Sergeant Charles Vondrak, a chemical analyst for the Chicago Police Crime Laboratory, testified that the crushed green plants found in the exhibits contained cannabis sativa, commonly referred to as marijuana, from which the resin was not removed.

The State's last witness was Ronald Gunderson, who testified he knew the defendant on February 17, 1966, and had known him for a year or two before that. He stated he had visited the defendant ten or fifteen times in Melrose Park, at which times he had observed men's clothing and knives in the second floor bedroom; that the defendant collected knives. He had never seen anyone else sleeping in that room, but had seen defendant's mother and sister in the basement of the house. Gunderson testified that he had been convicted of armed robbery, but was not now a narcotics addict.

At the close of the State's case the court denied defendant's motion for a directed verdict. The defendant did not take the stand or offer any evidence. The case was submitted to the jury which found the defendant guilty as charged.

OPINION: The defendant first raises the point that the State failed to prove him guilty beyond a reasonable doubt and argues that under the evidence in the case the State did not sustain the burden of showing that no one other than the defendant was responsible for the presence of the marijuana found on the premises. People v. Fox, 24 Ill2d 581, 182 NE2d 692, lays down the rule that in order to support a conviction of the crime of possession of narcotic drugs the State must prove not only that the defendant had knowledge of the presence of the narcotics, but also that they were in the immediate and exclusive control of the accused. The court said at page 584:

> "By the same decisions it is settled that actual physical possession is not required and that possession may be constructive as well as actual.
>
> . . . . . .
>
> "Constructive possession, it is said in Rodella v. United States, (9th cir) 286 F2d 306, 311, is that which exists without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion. In the same case, where the constructive possession of a cache of narcotics was at issue, the following also appears (p 312): 'The Restatement of Torts, § 216, defines "possession of a chattel" as being where a person has physical control of a chattel with intent to exercise control in his own behalf, or, one who has had such physical control with such intent to exercise control although he is no longer in physical control, if he had not abandoned it and no other person has obtained possession.' (Emphasis the court's.)"

In People v. Galloway, 28 Ill2d 355, 192 NE2d 370, the court said at page 358:

> "To support a conviction of the crime of unlawful possession of narcotic drugs the People must prove

6

■

not only that the accused had knowledge of the presence of the narcotics, but also that they were in his immediate possession and control. (People v. Smith, 20 Ill2d 345; People v. Matthews, 18 Ill2d 164.) At the same time, however, we have adopted the view that actual physical possession is not required to be proved, it being sufficient if constructive possession is established, and further, because the element of knowledge is seldom susceptible of direct proof, have held that knowledge may be proved by evidence of acts, declarations or conduct of the accused from which it may be fairly inferred that he knew of the existence of the narcotics at the place where they were found. (People v. Embry, 20 Ill2d 331; People v. Mack, 12 Ill2d 151.) In particular, in cases such as we have here, it is our view that 'where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury . . . a reasonable doubt as to his guilt.' (People v. Nettles, 23 Ill2d 306, 308–309.) Whether there is possession and whether there is knowledge are both questions of fact to be determined by the jury, or by the court where a jury is waived, and, as in the case of other factual determinations committed to a jury in criminal proceedings, its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. People v. Mack, 12 Ill2d 151."

Also, in People v. Embry, 20 Ill2d 331, 169 NE2d 767, the court held that the question of whether the accused had

7

knowledge of the narcotics was one of fact and was for the jury or for the court where the jury was waived. The court held that even if it was assumed that the evidence showed the defendant's wife had possession of the drugs, this would not preclude a finding that defendant was also in possession of the drugs. The court said at page 335:

> "In People v. Wheeler, 5 Ill2d 474, where the question was whether defendant was in exclusive possession of stolen goods, we held that the rule that possession must be exclusive does not mean that the possession may not be joint. This question has never been squarely presented to us in a case involving possession of narcotics, but courts of other jurisdictions have held that possession of narcotics may be joint. (People v. Hood, 50 Cal App2d 197, 309 P2d 856; Gonzales v. People, 128 Colo 522, 264 P2d 508.) We are of the opinion that these cases express a sound rule. To hold otherwise would permit two or more persons to gain immunity from prosecution on a charge of unlawful possession of narcotics by proving joint possession of the drugs. Such a result would be contrary to reason and would defeat the purpose of the Uniform Narcotic Drug Act."

In the case before us the evidence is that the Federal agents found, besides the narcotics, various articles clearly belonging to the defendant, including a billfold with a driver's license and personal identification cards in the name of the defendant. The agents seized the drugs, then discovered that the defendant had moved to the Elm Street apartment; the agents then found the same articles which they had previously found in the premises in the Melrose Park apartment, including tools which had been marked by the inspectors when they found them in Melrose Park. The fact that the agents

8

were admitted to the Melrose Park apartment by a woman they believed to be the mother of the defendant is immaterial, because the only inference that could be drawn from that fact was that if defendant alone did not have possession of the narcotics, then the woman had joint possession with him. Besides this, when the agents found the defendant at the Elm Street address, he showed them the search warrant which had been left at the Melrose Park address the day before. Also, there was the testimony of Robert Gunderson that he had visited the defendant ten or fifteen times in Melrose Park and had never seen anyone besides the defendant sleeping in the room, although he had seen the mother and sister in the basement of the house.

■ Following the rule laid down in the cases, an inference could properly be drawn by the jury that at the time the narcotics were seized by the agents by virtue of a search warrant, the defendant had possession of the drugs, sufficient to support the verdict that the defendant was guilty beyond a reasonable doubt.

The defendant next argues that the State failed to produce any witness to identify the defendant. However, the record shows that the defendant was the only person on trial and the only male subject mentioned throughout the whole course of the trial.

■ The record shows that when Agent Stratton was testifying he was asked, "Did you have occasion to see the defendant again immediately after February 17, 1966?" He answered that he did, and the form of the question was objected to. The question was then asked, "Did you have occasion to see him subsequent to February 17, 1966?" and the witness answered he had had occasion to see him next on February 18, 1966. The question was objected to and the objection was overruled by the court. The witness then testified that he saw the defendant in Chicago at 18 East Elm Street, in apartment 705. This

testimony is omitted—undoubtedly inadvertently—from the abstract. Stratton also testified that when he saw the defendant on February 18 at Elm Street "the defendant Ciconte showed me a copy of the search warrant that I had left at 165 North 22nd Avenue in Melrose Park on the day before." The identification was sufficient.

The defendant contends that the court improperly limited his cross-examination of a State's witness. During the cross-examination of Stratton the court refused to permit him to answer the question of whether the person identified as Elizabeth Ciconte was the mother of James Ciconte, and the defendant alleges that the witness was not permitted to answer as to whether Elizabeth Ciconte owned the premises. The defendant then tried to show the relationship of the parties by a report prepared by Stratton from information given to him by persons who did not testify at the trial. The court sustained the State's objection on the ground that the information which the defendant attempted to put into the record was hearsay. The testimony the defendant sought to introduce was an attempt to show the truth of the statements. This was improper.

In People v. Wright, 65 Ill App2d 23, at page 28, 212 NE2d 126, the court said: "In our opinion these statements made by the complaining witness and repeated by the police officers as to the identification of defendant are hearsay and inadmissible." See also People v. Carpenter, 28 Ill2d 116, 190 NE2d 738. The ruling of the court in the instant case was not improper.

The defendant urges that the State's Attorney made the following statement in his closing argument: "I submit that the evidence is now before you, and the State's evidence is uncontradicted at this time," arguing that the statement that the evidence was uncontradicted could only be considered as a comment to the fact that the

defendant did not testify, and that the court erred in following the rule laid down in People v. Norman, 28 Ill2d 77, 190 NE2d 819, where the court said at page 81:

> "This court has held that a prosecutor could properly call the attention of the jury to the fact that the State's evidence was uncontradicted even though the circumstances were such that the defendant was the only person who could have denied the People's evidence. (People v. Keagle, 7 Ill2d 408; People v. Novak, 370 Ill 220; People v. Birger, 329 Ill 352.) Although the prosecutor emphasized the uncontradicted character of the People's case, there was no evidence whatever presented by the defense, and statements pointing out the fact that the People's case was uncontradicted are not a reference to the failure of the defendant to testify within the meaning of this statute."

The same ruling was sustained in People v. Wollenberg, 37 Ill2d 480, 487, 229 NE2d 490; People v. Radford, 87 Ill App2d 308, 232 NE2d 100, decided in 1967; People v. Carver, 77 Ill App2d 247, 252–254, 222 NE2d 17. After following these cases we hold that no error was committed by the trial court.

██ Furthermore, there was no objection by the defendant in the instant case to any statement in the argument made by the State's Attorney. In People v. Conrad, 81 Ill App2d 34, 225 NE2d 713, it was said at page 49:

> "Defendant attempts to raise on appeal for the first time the alleged prejudicial nature of other statements made by the prosecutor. However, since no objection was made at trial the issue is waived. People v. Winters, 29 Ill2d 74, 80, 193 NE2d 809; People v. Switalski, 394 Ill 530, 69 NE2d 315."

11

We hold that no error was committed by the trial court and that in any case, the matter cannot be considered by us.

 Defendant further argues that the trial court committed error in refusing certain instructions offered by defendant. One of these was sufficiently covered by the given instructions tendered by the State. The second instruction is with regard to circumstantial evidence and is as follows:

"The law, in regard to circumstantial evidence, is this: In order to justify a jury in finding a verdict of guilty based on circumstantial evidence, the circumstances must not only be consistent with the guilt of the defendant, but they must be inconsistent with any other reasonable hypothesis that can be predicated on the evidence or stated in another form, it is not sufficient that the circumstances proved coincide with, account for, and therefore render probable the hypothesis of guilt asserted by the prosecution, but they must exclude to a moral certainty and beyond a reasonable doubt, every other hypothesis but the single one of guilt, or the jury must find the defendant not guilty."

In People v. Johnson, 88 Ill App2d 265, 232 NE2d 554, the court said at page 286:

"On the other hand, the last sentence in defendant's refused instruction No. 3, rendered the entire instruction incorrect, and therefore the instruction was properly refused. In summary, this instruction required the jury to find the defendant not guilty unless the circumstances excluded 'to all moral certainty, every other hypothesis but the single one of guilt of the defendant.' If this approach were to be followed in an instruction, it is not 'every other hypothesis' of defendant's innocence which must be ex-

12

■■■■■■

cluded on the basis of the evidence, but every 'reasonable hypothesis.' [Citing cases.]"

In the instant case, the failure of the instruction to state every other reasonable hypothesis renders the instruction improper.

The defendant also objects to the court's refusal to give Instruction D–10, which is as follows:

> In order to find the defendant guilty as charged in the indictment, you must first find that the prosecution has proved beyond a reasonable doubt:
>
> (1) That on February 17, 1966, the defendant possessed and had under his control a substance which was a narcotic drug, to wit: marijuana,
>
> (2) That he knew that the substance was a narcotic drug, to wit: marijuana,
>
> (3) That said possession was other than as authorized in the Uniform Narcotic Drug Act of the State of Illinois.
>
> In the event that you believe that the prosecution has failed to prove any one of the foregoing elements beyond a reasonable doubt, then it is your duty to find the defendant "Not Guilty."

The defendant argues in his behalf that the court failed to advise the jury that in order to find him guilty it must be proved that the defendant had knowledge of the fact that the substance was marijuana. The instruction which the court did give setting forth the elements of the crime was the same as the refused instruction just quoted except that it omitted subparagraph (2). However, the court did give the following instruction:

> The Court instructs the jury that the State must establish from the evidence beyond a reasonable doubt knowledge on the part of the defendant of the presence of narcotics and must establish that the narcotics were in the immediate and exclusive

13

control of the defendant. The question whether the accused had such knowledge is one of fact for the jury to decide.

If it is considered that that instruction would not be sufficient to require proof that the defendant knowingly had possession of marijuana, the case of People v. Truelock, 35 Ill2d 189, 220 NE2d 187, is controlling. There the court gave the following instruction, over the objection of the defendant:

> "The court instructs the jury in the language of the statute that it is unlawful for any person to possess or have under his control any narcotic drug except as authorized in the statute."

In Truelock the court further said at page 192:

> "The defendant argues that the instruction and form of verdict should have contained the word 'knowingly' since knowledge is an essential element of the crime of unlawful possession of narcotic drugs.
>
> "We agree that the trial court erred in giving the objected to instruction and form of jury verdict in this case. Without proof that a defendant has knowingly possessed a narcotic drug, a defendant cannot be convicted of the crime of unlawful possession of narcotic drugs, and the jury in this case should have been so instructed. However, we do not think that the error in this case requires reversal. 'Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' (People v. Ward, 32 Ill 2d 253, 256.) In the present case, the evidence of the defendant's knowledge of the presence of narcotics is clear and convincing. We do not think that

14

a jury could reasonably have found the defendant not guilty in this case, and therefore, reversal is not justified."

Truelock applies squarely to the case before us. We must further consider that in the instant case there was an instruction that there must be knowledge on the part of the defendant of the narcotics under his control.

We have considered all the instructions which were given by the trial court and conclude that, taken as a whole, they were fair and correct. The judgment of the Circuit Court should be affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.