**People of the State of Illinois, Plaintiff-Appellee, v. Allen Stanbeary, Defendant-Appellant.**

Gen. No. 53,590.

First District, Fourth Division.

June 10, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Arthur Belkind, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Murder. Ill Rev Stats 1967, c 38, § 9–1.

## JUDGMENT

After a jury trial, defendant was found guilty and sentenced to a term of 35 to 75 years and remanded to the custody of the Illinois Youth Commission.

## ISSUES RAISED ON APPEAL

1. Denial of defendant's motion to suppress physical evidence was error because the State failed to prove free and unequivocal consent to search, or the consent was tainted by fraud.

2. Defendant was denied due process of law because the State concealed exculpatory evidence from the defense prior to trial.

3. The prosecutor prejudiced the jury when he led it to believe that a defense witness had made prior inconsistent statements, while offering no evidence that he had made such statements.

4. The prosecutor prejudiced the jury by commenting on defendant's failure to testify.

## EVIDENCE AT THE HEARING ON DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

John Boeger, for the State:

He is a police officer and, on September 17, 1967, went to defendant's home on two separate occasions. On the first visit, defendant's mother opened the door. He and his partner, Detective Sullivan, identified themselves as police officers and showed proper identification. They asked if they could speak to her with regard to her son, and she replied, "Yes, come on in." They walked from the back porch to the front portion of the apartment and were met by defendant's father. They also explained the purpose of their visit to him.

The witness then observed a pair of boy's gym shoes on the floor in front of the sofa. He brought this to the attention of Detective Sullivan. Knowing that gym shoe footprints had been found at the scene of the crime, he

asked Mr. Stanbeary if those shoes belonged to his son, and was told that they did. The witness then asked Mr. Stanbeary if he would mind bringing the shoes to the police station. He asked, "Why?" and they replied that "it could be part of the investigation and that we would explain it more fully in our office." Mr. Stanbeary picked up the shoes and put them in a brown paper bag. The officers left the house without defendant or the shoes.

They drove to 77th and Normal where they met Detective Valesares and had a conversation with him, after which they returned to the Stanbeary home. They asked defendant to accompany them to the station, and indicated that they also preferred an adult to go along. Defendant was not arrested at this time. They gave Mr. Stanbeary a business card with the address of the station and took defendant and Mrs. Stanbeary there in a squad car.

The witness next saw the gym shoes at the station when the father brought them in in a brown paper bag and gave them to one of the detectives.

Lucille Stanbeary, on behalf of defendant:

She is defendant's mother and talked to the police officers at the back door after they rang, and let them in when they asked to see defendant. They went into the dining room. The detectives asked her if Allen could go to the station and she said "No." When they returned the second time, they asked for the gym shoes that were alongside the chair in the living room. She "gave them the right to the shoes." She told defendant to take the shoes to the police station. She complied with the request for the shoes because the men were police officers.

Allen Stanbeary, Sr., on behalf of defendant:

He is defendant's father and talked to the policemen in the living room after they first entered the house. They asked him to bring defendant to the station. He told them he would, but that it would take twenty minutes to half an hour to get ready. The officers left, but returned as the Stanbearys were preparing to leave. One of the of-

248

ficers asked if the gym shoes belonged to defendant and "someone answered, 'yes.'" The police then asked if they could take them to the station, and one of the officers took the shoes. The witness didn't take them, nor did he recall seeing his son take them.

Defendant's motion to suppress the gym shoes as evidence was denied.

EVIDENCE AT THE TRIAL

It was established at trial that the victim, Mrs. Lucille Huyck, 76 years of age, was raped and murdered on the evening of September 15, 1967. The deceased's son testified that his mother had owned a white, 1959 model Studebaker Lark. Deceased's next-door neighbor stated that on the evening before the murder, deceased had called her to relate that her purse, containing car keys, had been stolen. She further testified that on September 15, at approximately 10:30 p. m., she saw a light in deceased's garage and observed someone back deceased's car out of the driveway. After receiving a phone call from a friend who had been attempting to call deceased, and becoming suspicious, she and her husband discovered deceased's body.

Mrs. Mayme Matthews, a friend of Mrs. Huyck, testified that she had talked with deceased on September 15 until after 9:00 p. m. She did not know defendant personally, but deceased had spoken of him because he had cut her grass some months before. Another neighbor, Mrs. Florence Levi, testified that at 10:40 p. m., on September 15, she heard a car, honking loudly, leave deceased's garage. She heard it hit a building as if a collision occurred.

An investigation by the police, as testified to by several officers, indicated that deceased had suffered a gash in the head and fifty-one stab wounds on the upper portion of her body. A broken lamp was found at the side of her bed and small fragments from the lamp were found

in and around her hair. Two fingerprint experts testified that defendant's palm and fingerprints were found on the broken lamp.

Detective Valesares testified that deceased's garage door was open and that there were tire marks in the adjacent flower bed. The house was also damaged where the tire marks were made. He also observed footprints in the dust on an open wood porch at the rear of the victim's house. Photographs of the prints were taken and an expert testified that they had been made by the gym shoes found in defendant's home.

Valesares also testified that he surveyed the neighborhood and found deceased's automobile one-half block from defendant's home. The automobile was damaged on the left door.

Detective O'Reilly testified that he was at the police station on September 17, 1967, when defendant and his parents were brought in. He informed defendant at length, in explicit terms, of his constitutional rights. Defendant and his father were then left alone for about ten minutes, until his father told the witness, "Come in and sit down, he did it." Defendant then gave an oral confession in front of four police officers, in which he detailed the facts of the crime and subsequent use of the victim's automobile. The statement was reduced to writing, but defendant did not sign it.

Allen Stanbeary, Sr., testified that his son had not made a confession to the police, but had told them that he had been watching television with a friend. He denied that defendant had been advised of his rights. The witness left the station and, when he returned, one of the officers informed him that defendant had "admitted taking the lady's car or something pertaining to that," but he wouldn't let his son sign any statement.

Lulu Jackson, who lived across the street from the victim, testified that on September 15, 1967, she had observed a man sitting in a parked car in front of the

victim's house from 2:00 p. m. to 8:00 p. m. The man was about thirty years old, but she would not be able to recognize him if she saw him again.

OPINION

Defendant's initial contention is that the court erred in admitting the gym shoes into evidence. The testimony on the motion to suppress this evidence showed that the police were invited by Mrs. Stanbeary to enter the house and, while there, noticed the shoes in plain view on the floor. Having asked and been informed by defendant's father that the shoes belonged to defendant, the officer asked if he would mind bringing them to the police station as they "could be part of the investigation." Mrs. Stanbeary testified that she consented to this request. The shoes were brought to the station, although it is not clear who transported them. The police denied taking them, and asserted that they were taken by either defendant or his father.

■ Defendant argues that the State failed to prove a free and unequivocal consent to the search and seizure, thereby rendering it unlawful. See Bumper v. North Carolina, 391 US 543, 20 L Ed 797. The testimony does not support this position. There is no evidence that any duress or coercion, actual or implied, occurred. Mrs. Stanbeary voluntarily consented to the entry of the apartment by the police, and to the production of the gym shoes. We find that the Stanbearys' consent was "unequivocal and specific" and "freely and intelligently given." People v. Haskell, 41 Ill2d 25, 241 NE2d 430.

■ Defendant also contends, alternatively, that the consent was procured by a misrepresentation of facts; specifically, that the officer failed to tell Mr. Stanbeary, Sr., the exact reason for wanting the shoes. We believe that, given the circumstances of this case—that the investigation was in the embryonic stage and that defendant had not been placed under arrest—the officer was

justified in making the reply he did, as there were very few facts then known to him upon which he could have responded in a more definitive manner.

Moreover, the instant case did not involve unlawful search and seizure in violation of defendant's rights. It is undisputed that the shoes were in open view, and merely to see them is not a "search." A search implies "a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view." People v. Davis, 33 Ill2d 134, 138, 210 NE2d 530; People v. Stewart, 23 Ill2d 161, 177 NE2d 237. Nor did the police officers unlawfully seize the shoes. Upon viewing the potential evidence, they inquired to determine the owner, as part of a routine investigation. Their inquiry was freely answered and the Stanbearys voluntarily delivered the shoes to the station. (This version was according to police testimony, the credibility of which was properly determinable by the trial court.) The actions of the police were not unreasonable and defendant's fourth amendment privilege was not abused. See People v. Stacey, 25 Ill2d 258, 184 NE2d 866.

Defendant next contends that he was denied due process of law because the State concealed exculpatory evidence prior to trial. The evidence, contained in a police report which was not made known to defendant until trial, showed that on the day of the occurrence a man had been sitting for six hours in a parked car in front of deceased's house. Defense counsel requested the report during the trial and it was immediately tendered to him. Lulu Jackson, who was the source of the information contained in the report, testified for the defense. Therefore, the evidence was before the jury for their consideration on the issue of guilt. Defendant argues, however, that an intelligent defense on this issue was precluded by the late disclosure of the report; yet, we note that counsel made no request for additional time to

investigate the matter. At any rate, we believe the fact contained in the report to be of little probative value in light of the strong case presented by the State, and conclude that the handling of the report, as complained of by defendant, had no effect on either the fairness of the trial or its outcome. See Barbee v. Warden, Maryland Penitentiary, 331 F2d 842, 847. The delay in disclosure, if it could be so regarded, did not result in prejudice to defendant.

 Defendant also contends that the prosecutor prejudiced the jury by leading it to believe that defendant's father had made prior inconsistent statements, while not following through to offer evidence of such statements. Defense counsel, however, withdrew his objection to the line of questioning now complained of, and this constitutes a waiver of the point. See People v. Adams, 41 Ill2d 98, 242 NE2d 167; People v. Arnold, 27 Ill2d 294, 189 NE2d 241.

The last contention is that defendant was prejudiced by the prosecutor's indirect reference to defendant's failure to testify. The grounds for this point are based upon defendant's federal and state constitutional guarantees against self-incrimination and the statutory provision prohibiting any comment on his failure to testify. Ill Rev Stats 1967, c 38, § 155–1. A similar claim was considered in People v. Williams, 40 Ill2d 522, 240 NE2d 645, where the court stated at page 527:

> A careful analysis of the privilege and the reason for the prohibition reveals that their purpose is to prevent prejudice to an accused from his failure to testify, but *not* to prevent prejudice to his case from his failure to produce evidence to establish his defense.

The specific references at issue occurred during closing argument when the prosecutor stated that there was "no contradiction, no refuting the fact these were his gym

shoes." The prosecutor also commented that it was "conclusively established" and uncontradicted, without explanation, that defendant's fingerprints were those found on the broken lamp in deceased's home. With respect to defendant's oral admission, the prosecutor again argued that it is "undenied and uncontradicted."

Defendant argues that evidence presented in his behalf did contradict the facts as presented by the State. While it is true that certain testimony was offered that defendant had mowed deceased's lawn many months before, there was no intimation that, in the course of that employment, defendant had ever entered the house and thus had an opportunity to put fingerprints on the lamp. Somewhat similarly, defendant's father denied that his son made a statement to the police during the initial interrogation at the police station; but, when confronted, on his return, with the information that his son had confessed, he merely testified that he wouldn't let his son sign any statement.

In a situation much like this, where the defense had offered no evidence to refute the State's case, the Supreme Court said that "statements pointing out the fact that the People's case was uncontradicted are not a reference to the failure of the defendant to testify within the meaning of the statute." People v. Norman, 28 Ill2d 77, 81, 190 NE2d 819; People v. Ciconte, 102 Ill App2d 1, 11, 243 NE2d 407. Defendant urges that the reference to the "undenied" oral admission is especially prejudicial since a jury would only interpret that reference as applying to defendant's failure to deny. However, such a comment does not violate defendant's rights. It is permissible for a prosecutor to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the evidence was the defendant himself. People v. Mills, 40 Ill2d 4, 8, 237 NE 2d 697; People v. Norman, supra, and cases cited.

254

The prosecutor's design in the instant case appears to have been one of presenting the facts and conclusions to be drawn therefrom. He did not single out defendant for his failure to testify, but commented on the strength and uncontradicted nature of the State's evidence. We cannot say that the references were "intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." People v. Mills, supra. We hold that the prosecutor's comments did not violate defendant's rights or prejudice him in the eyes of the jury.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.