The People of the State of Illinois, Plaintiff-Appellee, *v.* Jim Minkin, a/k/a James Minkin (Impleaded), Defendant-Appellant.

(No. 55253;

First District—July 12, 1971.

Melvin B. Lewis and Richard B. Caifano, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Martin Moltz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

James Minkin was convicted, following a bench trial, of the offense of unlawful possession of narcotic drug. (Illinois Revised Statutes 1967, ch. 38, sec. 22—3.) Judgment was entered on the finding and he was admitted to probation for a period of five years. On appeal he contends that he was not proven guilty beyond a reasonable doubt and that the search warrant, execution of which resulted in his arrest, was issued without probable cause.

The evidence presented by the prosecution at trial established that at approximately 8:00 A.M. on June 11, 1969, several Chicago Police Officers and Federal Narcotics Agents executed a search warrant which had been issued the previous day. The warrant had been obtained pursuant to information received by one of the officers from an unnamed person

to the effect that the informant had purchased a quantity of marijuana from one Jerry Lacasse in an apartment located at 2845 East 80th Street. Several of the officers went to the rear of the premises and, through a glass panel in the rear door, observed a laundry bag containing "unmanicured" marijuana. (The term "manicured" is properly applied to the substance only after it has been processed.)

The officers knocked on the rear door and, no response being received, made a forcible entry. They discovered additional amounts of marijuana strewn about the kitchen floor and in the dining area as they passed through those rooms. In the living room they found defendant and one James Burger sleeping on couches. Between the couches and nearest defendant was a cocktail table on which was discovered approximately one pound of marijuana, some of which was "manicured" and some "unmanicured." Jerry Lacasse and additional quantities of marijuana were found in the bedroom. All the contraband recovered from the apartment weighed between forty and fifty pounds.

Also found in the apartment were letters and a telephone bill all of which were addressed to Jerry Lacasse at the apartment's street and number. No evidence was introduced linking defendant to the premises other than his presence at the time of the raid and no contraband was found on his person.

Michael K. Minkin, defendant's adoptive father, testified on his behalf to the following effect. Defendant resides with him at 6937 South Bennett. At approximately 1:30 A.M. on June 11, 1969, defendant and James Burger, a friend, entered the living room of the family home. Each was covered with grease and oil. Defendant stated to the witness that they had just spent nine hours putting a new transmission into an old foreign make car and requested permission for both of them to shower and for him to spend the remainder of the night at Burger's apartment in order to facilitate an early start when he was to accompany Burger to the latter's draft board office later in the morning. Both Burger and defendant showered and left the house at approximately 2:30 A.M.

Defendant, who at the time of trial was a student teacher at Yale Upper Grade Center and was also employed as night manager of a bicycle shop, testified on his own behalf as follows. On June 10, 1969, he began working on a car at about 10:00 A.M. and continued in that endeavor until 1:00 P.M. when he and Burger borrowed an auto and drove to the office of Burger's doctor in Park Forest to pick up some medical records which were to be delivered to Burger's draft board on the following day. They returned at 3:00 P.M. and resumed work on the car, eventually finishing the undertaking at 1:30 A.M. He then consulted with his father concerning permission for both him and Burger to shower and

for permission to remain at Burger's apartment for the remainder of the night to ensure an early departure for the draft office in the morning. They showered and left defendant's father's home at 3:00 A.M.

En route to Burger's apartment they stopped at a restaurant at 87th and Stoney Island Avenue to eat, thus delaying their arrival at the apartment which Burger shared with Jerry Lacasse until approximately 4:30 A.M. Upon arrival at the apartment, they briefly looked over Burger's medical records and then retired on two couches in the living room. Defendant did not see Jerry Lacasse or know whether he was present in the apartment, having limited his movements to the living and bath rooms. He did not notice any marijuana in the apartment nor would he recognize it on sight.

Finally, defendant testified that he had known Burger for about five years, but that Burger's roommate, Lacasse was merely a passing acquaintance whom he had known for a year or less.

■■ A conviction for unlawful possession of narcotic drug may be sustained even where the accused was not demonstrated to have contraband on his person where the evidence discloses that he had possession or control over premises on which he knew contraband to be located. (*People v. Embry* (1960), 20 Ill.2d 331, 169 N.E.2d 767.) Where the evidence establishes that the accused had control over premises upon which narcotics are found, a *prima facie* case is made, for an inference of knowledge arises from the fact of control. *People v. Ciconte* (1969), 102 Ill.App.2d 1, 243 N.E.2d 407.

■■ Following a careful reading of the testimony presented at trial, ever mindful of the salutary principle that this court will not disturb the findings of the trier of fact unless the proof is so unsatisfactory as to justify a reasonable doubt of defendant's guilt, we must nevertheless conclude that defendant was not proven guilty beyond a reasonable doubt. There was neither evidence of his actual possession of the contraband in question, nor of his control over the premises upon which it was discovered. Since control over the premises was not established, it cannot be inferred that the narcotics were in his constructive possession. The only evidence presented by the prosecution linking defendant to the apartment was the fact of his presence at the time the raid was conducted. *People v. Pugh* (1967), 36 Ill.2d 435, 223 N.E.2d 115; *People v. Robinson* (1969), 102 Ill.App.2d 171, 243 N.E.2d 594.

In view of our findings based upon the evidence, discussion of defendant's contention with respect to issuance of the warrant is unnecessary.

Judgment reversed.

BURKE, P. J., and GOLDBERG, J., concur.