The People of the State of Illinois, Plaintiff-Appellant, *v.* Lee Scott Nunn, Defendant-Appellee.

(No. 11571; )

Fourth District—September 27, 1972.

TRAPP, P. J., dissenting.

Lawrence E. Johnson, State's Attorney, of Urbana, (James B. Burgess, Jr., Assistant State's Attorney, and L. Keith Hays, Senior Law Student, of counsel,) for the People.

Donald M. Reno, Jr., of Reno, O'Byrne & Kepley, of Champaign, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Certain items of evidence were seized by the police from a room occupied by the defendant in his mother's home under factual circumstances related in the following stipulation. A motion of the defendant to suppress this evidence was allowed following an evidentiary hearing. This is an appeal by the People from the order of suppression. We affirm.

The facts are stipulated as follows:

"On May 17, 1971, a hearing was held before the Honorable Frederick S. Green of the Circuit Court of the Sixth Judicial Circuit, Champaign County, Urbana, Illinois, on a motion to suppress certain evidence which was seized during the search on March 9, 1971, of the premises at 714 South State Street, Champaign, Illinois, the home of Mrs. Rose A. Nunn, mother of Defendant-Appellee.

On March 9, 1971, the date of the search, Defendant was nineteen years of age and had lived in Mrs. Nunn's home. During the time Defendant lived in Mrs. Nunn's house, there were no restrictions on her access to his room and no conversation whether police could enter therein. Mrs. Nunn's only activity in Defendant's room was to clean it, to make his bed and to change the linen. Defendant paid no rent, but gave Mrs. Nunn five to ten dollars a week intermittently. Defendant could not recall the date he last worked prior to March 9, 1971.

Mrs. Nunn became concerned about the activity in her home during her absence when she returned once and found a marble top table broken. She discussed her concern with her former husband, the father of Defendant. Mr. Nunn unofficially tried to effect a search of Defendant's room by the police. Police declined unless Mrs. Nunn gave written consent. She went to the police station and gave written consent. She accompanied police officers to her home and was present during the search thereof. Police utilized their pass key to facilitate entry to Defendant's room.

The evidence, which was the subject of the motion to suppress, was seized from a waste basket and a cabinet over the sink both located in the kitchen. This kitchen was accessible only from Defendant's room.

Approximately ten to fourteen days next preceding the search, Defendant 'moved out', locked the door to his room and told Mrs. Nunn to allow no one to enter.

The Court found: that the area in which the suppressed articles were found had been set aside by the mother of the Defendant for his exclusive use, subject to her using the area for maintenance purposes and for caring for his personal effects, and that said mother had no authority to consent to the search. The Court allowed the motion to suppress."

Stipulation of facts is a commendable practice and one which this court encourages. In this case, however, we ordered a transcript of the hearing filed in a quest for additional factual information. Such transcript furn-

ishes no substantial additional facts to supplement those found in the stipulation.

The issue presented by this appeal is whether the consent of the mother to the search under the circumstances related validates the warrantless search and seizure of the locked premises when the same is challenged by the defendant. This inquiry compels an examination of search and seizure cases which initially discussed a question of waiver of defendant's constitutional rights by another under the doctrine of implied consent or agency or apparent authority or sufficient possessory interest to validate the consent. In *Amos v. United States* (1920), 255 U.S. 313, 65 L.Ed. 654, 41 S.Ct. 266, in discussing the authority of a wife to consent to a search for evidence to be used against her husband, the court intimated that such consent would not validate the search. The specific holding, however, was to the effect that the consent there under review was coerced. Forty years later in *Chapman v. United States* (1961), 365 U.S. 610, 5 L.Ed.2d 828, 81 S.Ct. 776, the court held that a landlord who suspected that his tenant was operating a still and who had certain interests in the property, although the tenant had possession, could not validly consent to a search of the leased premises. In the course of the opinion in *Chapman* the court seemed to rule out the importation into the law of search and seizure the subtle distinctions of property law. Such importation was deemed to be "unnecessary" and "ill-advised." In *Stoner v. California* (1964), 376 U.S. 483, 11 L.Ed.2d 856, S.Ct. 889, the court refused to import into the law of search and seizure the niceties of the law of agency or the doctrine of "apparent authority" and in that case held that a hotel clerk was not authorized to permit search of a guest's room. The court rejected an argument based upon agency or apparent authority as "unpersuasive" and said:

> "* * * Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority.' As this Court has said, 'it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical * * *. [W]e ought not to bow to them in the fair administration of the criminal law. To do so would not comport with our justly proud claim of the procedural protections accorded to those charged with crime.' *Jones v. United States*, 362 U.S. 257,

266-267, 4 L.Ed.2d 697, 705-706, 80 S.Ct. 725, 78 A.L.R.2d 233.

It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent. It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room."

In *Jones* the court held that a defendant's standing or right to object was a personal right of the defendant and was not dependent upon the extent of his property or possessory interest in the premises searched.

In discussing the scope of the Fourth Amendment protection against unreasonable search and seizure in *Katz v. United States*, 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507, while not there concerned with third party consent, the court clearly indicates that the Fourth Amendment protects people—not places or areas—and that which is sought to be protected is an individual's entitlement to know that he is free from unreasonable search and seizure or governmental intrusion.

In *Mancusi v. DeForte*, 392 U.S. 364, 20 L.Ed.2d 1154, 88 S.Ct. 2120, the Fourth Amendment right was equated to "a reasonable expectation of freedom from governmental intrusion." In *Combs v. United States* (40 L.Week 4917) (U.S.), 33 L.Ed.2d 308, 92 S.Ct., the court again discusses, in the language of *Mancusi*, the defendant's reasonable expectation of freedom from governmental intrusion upon the searched premises.

██ Thus, it appears to us that the cases relating to nature and extent of the interest in the property of the consenter, the relationship of the consenter and the defendant, and the issue of agency or apparent authority are of historical, rather than determinative, significance in considering the validity of a third party consent to an otherwise clearly invalid search. See 20 *Journal of Public Law* 313 (Emory Law School), and *Washington University Law Quarterly* (Vol. 1967), pp. 12-28, and cases there cited.

██ It is readily apparent here that the area searched had been set aside for the defendant's exclusive use in his mother's home. Everything in the stipulated facts and in the transcript of evidence before us points to the conclusion that the seized material was in an area where the defendant could reasonably expect freedom from governmental intrusion with or without his mother's consent. The facts clearly negate the existence of authority in the mother, expressed or implied, to make a valid consent to the search. The facts likewise negate any possessory interest in the mother sufficient to authorize a search. The fact of minority does

not deprive the defendant of his rights under the constitution of this State or of the United States. There is no suggestion that the Fourth Amendment protection of people, not places, is limited to "adult" people.

In the case of *People v. Thomas,* 120 Ill.App.2d 219, 256 N.E.2d 870, the Appellate Court for the Fifth District held that a mother who produced a weapon of the defendant at the request of two police officers had sufficient possessory interest in the house where the defendant lived as to authorize a search. The court cited two Illinois Supreme Court cases in support of its conclusion, both of which related to consent by a wife of a defendant to a search of jointly occupied premises. The holding in *Thomas,* although the factual details are not recited, may well be consistent with the reasonable expectation of privacy concept.

Thus, we conclude that under the test of reasonable expectation of privacy, this search was invalid. If the test is possessory interest, the search was invalid. If the test is implied or apparent authority, the search was invalid. The judgment of the circuit court of Champaign County was correct in its allowance of the motion to suppress and that judgment is affirmed.

Judgment affirmed.

SIMKINS, J., concurs.

Mr. PRESIDING JUSTICE TRAPP dissenting:

The conclusions reached upon the facts in the principal opinion are not persuasive. Defendant's argument itself is not persuasive that the intermittent gift of some five or ten dollars elevated him into the status of a tenant so as to bring this case within the rule of *Chapman v. United States,* 365 U.S. 610, 5 L.Ed.2d 828, 81 S.Ct. 776. The stipulation first states that the mother suffered no restriction upon her access to the rooms. Then the defendant "moved out"—an affirmative, volitional act. If anything, such action negates the claim of a tenancy. The locking of the door was a unilateral act that cannot reasonably be said to negate or reduce the mother's right of access or of occupancy in the entire premises.

One is constrained to note that *Mancusi v. DeForte,* 392 U.S. 364, 20 L.Ed.2d 1154, 88 S.Ct. 2120; *Combs v. United States,* (U.S.), 33 L.Ed.2d 308, 92 S.Ct., and *Jones v. United States,* 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725, do not approach the issue of a consent to search by a parent householder. In *Jones,* the issue was "standing" to move to suppress and it was held that one legitimately on the premises had such standing. The actual tenant was not present and there was no issue of consent by the occupant having control of the premises. In *Mancusi,* the issue again

was standing to suppress. Defendant had custody of the papers seized in the office occupied by several persons, although such papers were not his private property. This was said to give him standing to suppress, but the opinion explicitly recognizes that defendant's superiors could have given consent, although consent was not at issue. In *Combs,* the defendant had stored stolen whiskey in a shed on his father's farm. The issue was standing to suppress. There was no issue concerning consent to search by the father. Nor can it be said that *Katz v. United States,* 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507, is relevant as authority upon these issues. As a paying user of the telephone booth subject to electronic surveillance, the statute of *Katz* was more akin to that of a tenant or of a person entitled to the sole use of the premises.

The cases are not such authority as to overcome a substantial number of cases which have determined that one entitled to the use and occupancy may give a valid consent to a search of the premises.

In *United States v. Stone,* 401 F.2d 32, a step-mother gave consent to search the home, including a specific area in the basement where defendant stored personal belongings. The consent was held valid as she had immediate control and occupancy of the premises. In *Bumper v. North Carolina,* 391 U.S. 543, 20 L.Ed.2d 797, 88 S.Ct. 1788, it was determined that a grandmother's consent was coerced by the apparent authority of a search warrant, but the opinion supports the inference that but for such fact the consent would otherwise be valid. In *People v. Koshiol,* 45 Ill.2d 573, 262 N.E.2d 446, a husband's consent to search was authorized by his right to possession of the premises. There was also involved, as is perhaps the case here, a right to protect himself from his wife's poisonous actions. See also *People v. Haskell,* 41 Ill.2d 25, 241 N.E.2d 430.

In *State v. Kinderman* (Minn.), 136 N.W.2d 577, defendant resided in the home of his father. The latter consented to a search by police, which included defendant's bedroom closet and other parts of the house. It was held that the parental consent to the search was valid. In *Mears v. State,* 52 Wis.2d 435, 190 N.W.2d 184, the mother found stolen furs in her son's closet. Her consent to a police search was held to be valid upon her right to use and occupancy. In *State v. Vidor,* 75 Wash.2d 607, 452 Pac. 961, the son was visiting at his mother's home. The mother's consent to a police search was upheld upon the basis of her control and possession of the premises. This rule had been followed in Illinois. *People v. Thomas,* 120 Ill.App.2d 219, 256 N.E.2d 870.

In *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022, the wife produced her husband's guns and clothes from a closet and turned them over to the police. The issue was whether the conduct

of the police was such as to subject the items to the exclusionary rule. The court pointed out that the wife could have taken the items to the police and that such would not have been subject to the Fourth Amendment policy of exclusion. We suggest that such statement is equally applicable to this case.

In *People v. Stanbeary*, 126 Ill.App.2d 244, 261 N.E.2d 765, the police were invited into the home by the mother. The tennis shoes which became items of evidence were in plain view upon the floor. Here, the items were in a waste basket and upon a shelf. There is substantial basis for saying that nothing stipulated suggests that the mother was excluded from her use and occupancy of the entire house.

Finally, in *Abel v. United States*, 362 U.S. 217, 4 L.Ed.2d 668, 80 S.Ct. 683, it was held that the matters found in the waste basket of a hotel room after the defendant had moved out were considered in the light of abandoned property and not subject to exclusion. Such view is applicable here.

In the several aspects suggested, the trial court erred in excluding the evidence.